UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-CV-39-KSF

VALVOLINE INSTANT OIL CHANGE
    FRANCHISING, INC., et al.                                              PLAINTIFFS

VS.                         **OPINION AND ORDER**

RFG OIL, INC.                                                                       DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant RFG Oil, Inc. ("RFG") to dismiss for improper venue or to transfer this action to the Southern District of California. For the reasons discussed below, the motion to transfer will be granted, and the motion to dismiss will be denied as moot.

**I.    BACKGROUND**

RFG moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) on the ground that there is no valid agreement between the parties to require litigation to be brought in Lexington, Kentucky, under Kentucky law, and to waive any objection for forum *non conveniens*. RFG claims there was no meeting of the minds on the terms of the agreement. It further argues that any such forum selection clause violates public policy under California franchise statutes. Alternatively it asks this court to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404.

RFG is a California corporation owned by two California residents, David Gong ("Gong") and Jeff Gong ("Jeff Gong"). DE 33-1, p. 2. David Gong is the majority shareholder and President. In California, RFG operated more than thirty oil change and quick lube centers under Valvoline Instant Oil Change franchise agreements with Plaintiffs Valvoline Instant Oil Change Franchising, Inc. ("VIOCF") and Ashland Consumer Markets, a commercial unit of Ashland, Inc. ("Ashland").

The franchise relationship continued for more than twenty years, from 1989 through November 30, 2011.

VIOCF is a Kentucky corporation with a principal place of business in Lexington, Kentucky. Ashland is a Kentucky corporation with a principal place of business in Covington, Kentucky. VIOCF and Ashland filed this action on February 2012 alleging trademark infringement, tortious interference, unfair competition, breach of contract and also sought declaratory and injunctive relief. The background facts are that RFG made a large product supply order totaling over $500,000.00 in November 2010, but allegedly failed to pay for the products. After months of warnings and negotiations, VIOCF claims it terminated the franchise License Agreements November 30, 2011 following a November 29 meeting with Gong in California. DE 1 ¶¶ 22-23. Because RFG was not able to pay the amounts due to VIOCF at that time, VIOCF offered a new relationship through a We Feature Agreement ("We Feature") whereby RFG could feature Valvoline products and slowly repay the amounts it already owed through a surcharge on new oil purchases. *Id*. at ¶ 27; DE 1-3. VIOCF contends this arrangement is not a franchise. DE 38, p. 10; DE 38-4 ¶ 15. The We Feature included requirements that RFG purchase 100 percent of its bulk motor oil from Valvoline and that there be no commingling or adulteration of the products. DE 1-3 ¶¶ 4,8.

Although various documents were discussed and left with Gong during the November 29 meeting, he waited until the morning of December 6, 2011 to transmit a signed Termination Notice, We Feature Agreement, and General Release as President of RFG. Gong emailed these documents to VIOCF's Vice President, Matthew P. McKeown, and said, "it looks like there is a typo on the term" in paragraph 1 of the We Feature. Paragraph 1 provided in part:

> This agreement commences on December 1st, 2011 ("Commencement Date") and continues for a period of 3 years (the "Term") or the date that Buyer has paid the amounts listed on Exhibit A in full, whichever is longer, unless earlier terminated pursuant to this agreement.

Gong thought the word "longer" should be replaced with "shorter." DE 41-1. McKeown responded that morning that paragraph 1 is correct, as it extends the term of the agreement until all debts are

paid in full. McKeown noted that the first two pages of the We Feature were not included in the original email from Gong and asked him to "send a copy without this part changed." *Id.* That afternoon, Gong sent an email attaching pages 1-2, but he questioned how he could terminate the We Feature before the end of its three-year term if the word "longer" stayed in. DE 33-5. On the first page of the We Feature, he had stricken the word "longer" and written in "shorter." DE 1-3.

On December 7, McKeown emailed Gong, saying "[t]he reason 'longer' should remain in the agreement is that you have the ability to buy out the agreement at any time. The cancellation agreement provides for this. Would you please resign a clean copy and scan and mail the original?" DE 33-5. On December 8, McKeown again emailed Gong, saying "I will attempt to address your questions."[1] DE 41-2. McKeown addressed several issues, including the possibility that all debts would not be paid at the end of three years and that the Agreement needed to continue until full payment had been made; that Gong could open any stores as long as they purchased Valvoline products; the status of customer lists; negotiations regarding an EZ Lube acquisition; and confidentiality of agreements. McKeown concluded: "While we have the scanned copy of this agreement and can execute that version, we would like the signed original. Please send that copy promptly." DE 41-2. Later that day, McKeown emailed Gong saying, "This should clarify and remove the need for your original changes. Please sign and return the signed originals." DE 33-6. A letter dated December 8 from Ashland's Senior Counsel to Gong offered an Amendment to Revised Confirmation of Termination Notice stating that an offer to sign a Settlement Agreement would remain open during the Term of the We Feature National Account Supply Agreement. DE 41-4.

The next communication in the record is an email from Gong to McKeown on December 12, stating Gong forgot to add that paragraph 1 of the We Feature needs to be clear about reduction of the amount due as payments are made. DE 33-7. Two days later, Ashland's Vice

---

[1] Any document with Gong's "questions" was not provided to the Court.

3

President, Anthony Puckett, executed the We Feature that Gong had emailed December 6 including Gong's change. DE 1-3, DE 38-4 ¶ 19. On December 16, McKeown emailed Gong that the Settlement Agreement would be adjusted to reflect the amounts due at the time of any termination and that no further modification of the We Feature Agreement was necessary at this point. He continued: "Our current position is that we have a We Feature Agreement. The Settlement Agreement was written for an immediate signature without a We Feature. Now that we have a We Feature agreement, it will need to be modified to reflect that at the appropriate time." McKeown acknowledged Gong's changing "longer" to "shorter" and that Ashland had signed the copy that included the change. He explained again the risk that Ashland might be left with unpaid debt at the end of three years with Gong's wording and said he "would prefer a copy of the original with the 'shorter' modification changed." DE 33-7.

On January 5, 2012, Ashland's Senior Counsel wrote Gong a Second Amendment to Revised Confirmation of Termination Notice in which he stated that the Settlement Agreement allowing RFG to cancel the We Feature Agreement "is offered throughout the term of the We Feature Agreement...." The Second Amendment also discusses amounts due and states that Jeff Gong's signature is not required on documents related to the We Feature Agreement or Termination Notice, but VIOCF will not release Jeff Gong's personal guaranty if he does not sign. DE 41-4. Based upon these communications, Gong argues there was no meeting of the minds on the terms of the We Feature and, accordingly, there is no valid agreement containing a forum selection clause and waiver of venue. Notably, the forum selection clause and waiver were never mentioned during the negotiations.

On February 3, 2012, Ashland's Vice President Puckett wrote a letter to RFG (also emailed) saying that RFG was not meeting the requirement of buying 100 percent of its bulk motor oil from Valvoline, but was instead purchasing competitive product and selling it under Valvoline's trademarks, thereby causing Valvoline "serious quality and brand integrity issues." It referenced

4

a conversation a week earlier between Gong and McKeown in which Gong apparently said RFG's purchases of competitive product were necessary because the distributor would not pump bulk oil into drums at stores where he had not yet installed bulk oil tanks. Puckett proposed a temporary accommodation of delivery in drums. The letter also noted that RFG was required to complete the transition from VIOC to We Feature, including new signage and point of sale system, within ninety days of the termination. Because RFG had not been meeting its minimum purchase requirements, Puckett expressed concern that RFG would not be in a position to complete the transition in a timely manner and requested assurance regarding compliance. DE 38-9.

That same day, counsel for RFG wrote and emailed Ashland's Senior Counsel Haraldson that VIOCF and Ashland were "ordered to cease and desist in its current efforts to terminate RFG's franchise agreements with VIOCF...." DE 1-5. The letter claimed RFG was not in default and that the termination notice and revisions were "void and unenforceable." RFG made various demands for continuation of the franchises and set a deadline of February 10, 2012 for compliance. *Id.* On February 7, 2012, one of RFG's locations refused a 55 gallon delivery of Valvoline oil from a Valvoline distributor. DE 1 ¶ 44. Plaintiffs filed this action the next day and said that it had terminated the We Feature agreement based on RFG's "clear expression of its intention not to comply" with its terms. DE 1 ¶ 47.

## II.   ANALYSIS

Plaintiffs base venue in this district on "28 U.S.C. §§ 1391(b) and (c), as well as pursuant to RFG's contractual consent to personal jurisdiction and venue in this judicial district and express waiver of any objection to same." DE 1 ¶ 17. Plaintiffs rely on Paragraph 23 of the We Feature Agreement, which states in part:

> As a specifically-bargained inducement for Valvoline to enter into this Agreement, Buyer agrees that any action, suit or proceeding in a court of law in respect to or arising out of this agreement, its validity or performance ... shall be initiated and prosecuted as to all parties and their successors and assigns at Lexington, Kentucky.... Buyer consents to and submits to the exercise of jurisdiction over its person by any court situated at Lexington, Kentucky having jurisdiction over the

> subject matter.  Buyer waives any objection based on forum *non conveniens* and any objection to venue of any action, suit or proceeding instituted hereunder.

DE 1-3 ¶ 23.  Plaintiffs also argue venue is proper under 28 U.S.C. § 1391(b)(1) because RFG is subject to personal jurisdiction under Kentucky's long-arm statute as a result of his long-standing business relationship with Valvoline, which they claim constitutes "[t]ransacting business in this Commonwealth."  KRS 454.210(2)(a)(1).  They further argue venue is proper under § 1391(b)(2) because "a substantial part of the events giving rise to the claims against RFG took place in Kentucky."  DE 38, pp. 25-27.  Plaintiffs also argue that RFG cannot establish the case should be transferred under 28 U.S.C. § 1404(a) because "a transfer would merely shift the inconvenience from RFG to Plaintiffs without providing any substantial benefits."  DE 38, p. 16.

RFG disputes all claims of venue in Kentucky and seeks transfer pursuant to 28 U.S.C. § 1404(a), which states:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Federal law governs the decision whether to grant a motion to transfer venue where a forum selection clause is involved.  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988).  *See also Wong v. Partygaming Ltd*, 589 F.3d 821, 826 (6th Cir. 2009) ("[F]ederal law governs the inquiry when a federal court, sitting in diversity, evaluates a forum selection clause in the context of a 28 U.S.C. § 1404(a) motion to transfer venue....").  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart*, 487 U.S. at 29. In ruling on a motion to transfer under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

In this case, it is undisputed that the action could have originally been brought in the Southern District of California where RFG resides. Accordingly, it is an appropriate forum to which this action might be transferred. The party opposing a forum selection clause has the burden of showing that the clause should not be enforced. *Wong,* 589 F.3d at 828.

### A.   Private Interest Factors

#### 1.   Plaintiffs' Choice of Forum and Forum Selection Clause

For purposes of this motion to transfer, this Court will assume, without deciding, that the forum selection clause designating Kentucky as the appropriate forum is valid and enforceable.[2] A plaintiff's choice of forum and the existence of a forum selection clause are ordinarily strong factors in an analysis of a motion to transfer venue. However, neither factor is controlling. The United States Supreme Court has held that the existence of a forum selection clause is only "one relevant factor" for the court's consideration. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). *See also Kerobo v. Southwestern Clean Fuels* Corp., 285 F.3d 531, 537 (6th Cir. 2002) ("A forum-selection clause in a contract is one of the factors to consider" in a § 1404(a) analysis); *Langley v. Prudential Mortgage Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008) ("§ 1404(a)'s balancing test controls and the forum-selection clause is considered as one factor in the overall balance." "[A] forum-selection clause is not dispositive and must be weighted against other factors in the § 1404(a) balancing test.") (Moore, J., concurring).

Additionally, the plaintiff's choice of forum is entitled to significantly less weight where the forum has little connection with the matter in controversy. *Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Here, the claims themselves have little to do with Kentucky.

---

[2] The Court acknowledges RFG's arguments that there is no valid We Feature Agreement and, therefore, no forum selection clause. That issue need not be decided at this time. A court may decide a motion to transfer (a revision of *forum non conveniens*) before other issues are addressed. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 432 (2007).

7

Plaintiffs argue that venue is proper in Kentucky because RFG purchased products from Kentucky; the administration of the contracts occurred in Valvoline's business centers in Kentucky; and "Valvoline's negotiation and administration of and performance under the We Feature Agreement with RFG also occurred in Kentucky." DE 38, p. 26. Plaintiffs also argue that the infringement of the trademarks "led to an injury that largely would be felt in Kentucky." *Id.* at 27.

With respect to economic harm, "[m]ost courts have found that the suffering of economic harm within a district is not sufficient without more to warrant transactional venue in that district." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3806.1 (3d ed. 2007). This District has agreed. *Alltech, Inc. v. Carter*, No. 5:08-CV-325, 2010 WL 988987 at *3 (E.D. Ky. March 15, 2010).

Additionally, the test for venue is not the jurisdictional requirement of minimum contacts with the forum state. Instead, the "nature of the events' relationship with the forum for venue purposes must be 'substantial.'" 14D Wright, Miller and Cooper § 3806.1. Gong's affidavit states that all meetings with Plaintiffs during the past seven years have been in California. DE 41-5. To the extent that RFG purchased bulk products from other companies, refused delivery of Valvoline products, commingled products, and improperly continued the use of trademarks, those events all occurred in California, not Kentucky. The events giving rise to Plaintiffs' contract claims did not arise from the purchase of products in Kentucky or the administration of the contracts in Kentucky.

"The events 'giving rise' to a trademark claim for purposes of § 1391 occur in the location where the defendant attempts to pass off its product as the plaintiff's trademarked product." *Dakota Beef, LLC v. Pigors*, 445 F. Supp.2d 917, 920 (N. D. Ill. 2006). "In a venue analysis, however, where the plaintiff or the alleged trademark reside is not relevant." *Taylor & Francis Group, PLC v. McCue*, 145 F. Supp.2d 627, 629-30 (E. D. Pa. 2001). "In a trademark case, the claimed wrongs occur where the passing off occurred." *Id.* at 630. *See also United Truck & Equipment, Inc. v. Supply Co.*, No. CV 08-01046, 2008 WL 4811368 (D. Ariz. November 5, 2008)

8

("In a trademark suit brought under the Lanham Act, a 'substantial part' of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods....").

Plaintiffs' tortious interference claims arise from a February 6, 2012 letter sent by RFG from California to Henley and Ashland demanding that Henley cease and desist from communications with Ashland and VIOCF regarding the purchase and operation of EZ Lube service centers in San Diego. DE 1 ¶ 135. A related tortious interference claim arises from a February 3, 2012 letter to Ashland and VIOCF demanding they cease further communications with Henley. *Id.* at ¶ 146.

RFG correctly argues in support of its motion to transfer that any alleged improper use of VIOCF marks, breach of the alleged We Feature Agreement and tortious interference with licensing of southern California VIOC locations to Plaintiff Henley occurred in California. RFG notes the alleged purchase of bulk products from other entities, commingling non-Valvoline products with other products, "palming off" non-Valvoline oil to its customers, failure to fulfill purchase obligations, wrongful refusal of a delivery of Valvoline oil, and continued use of trademarks and service marks all occurred in California. Additionally, any issues of trademark infringement would involve districts where customers were or were likely to be confused, which would be California. DE 33-1, pp. 22-23. Any alleged interference with Henley's contracts occurred in California.

This Court recognizes that the question is not which of the potential forums is the "best" venue; nonetheless, a "substantial connection to the claim" is required. *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (6th Cir. 1994). Kentucky has little connection with the "claims" before this Court. Assuming, without deciding, that venue is proper in Kentucky, the weight to be given to Plaintiffs' choice is lessened.

Plaintiffs rely on the decision in *KFC Corp. v. Lilleoren*, 783 F. Supp. 1022 (W.D. Ky. 1992), which states: "In addition, common sense dictates that corporations dealing with citizens of many different jurisdictions, as does KFC, would legitimately want to limit the legal actions arising out of

9

their dealings to one forum." *Id.* at 1025.  That is a good reason for wanting an enforceable forum selection clause, but the *KFC* court's discussion was in the context of convenience to the parties, rather than any weight to be balanced.  It found that either forum would be "equally inconvenient" for one of the parties.  *Id.*  In this case, the Court is assuming the validity of the forum selection clause for purposes of the motion to transfer.

Overall, the forum selection clause and waiver favor Kentucky as the forum, but not as strongly as otherwise would be the case.  Gong notes that Plaintiffs "were well aware that their forum selection and waiver provisions might conflict with California law and, in that event, would not be enforced."  DE 41, p. 15 and pp. 4-7.  Plaintiffs' choice of forum also favors Kentucky, but only slightly in light of the limited connection with the claims.

### 2. Convenience of the Parties

"Witnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)."  *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp.2d 934, 937 (E.D. Mich. 2001).  A "lesser showing of inconvenience" is needed for a § 1404(a) transfer than that for a *forum non conveniens* dismissal.  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

VIOCF and Ashland are Kentucky residents.  However, they have conducted business with RFG in California for more than two decades.  Plaintiff Henley Enterprises, Inc. is a citizen of Massachusetts. Henley Pacific LLC's members are residents of Massachusetts, with the exception of one member who lives in Kentucky.  Don Smith, CEO of Henley Enterprises, has recently established a part-time residence in San Diego according to RFG.  VIOCF and the Henley entities are or have been registered to do business in California.  Henley either has already, or is under contract, to purchase seventy-three EZ Lube centers in San Diego, California, and convert them to VIOCF licensees.  Plaintiffs allege that RFG tortiously interfered with those expected contracts.  DE 1 ¶¶ 132-151.  Thus, it appears that all Plaintiffs do conduct substantial business in southern

California. RFG argues that any inconvenience to Plaintiffs from litigating in California would be only slight under the circumstances. DE 33-1, pp. 20-21.

By contrast, RFG argues that it and Gong will be "severely inconvenienced" by defending the action in Kentucky. *Id.* at 21. RFG and Gong are residents of San Diego in the Southern District of California. In June 2001, Gong suffered a major spinal cord injury which left him permanently paralyzed below his shoulders as a quadriplegic. His paralysis requires that he have medical equipment, an adaptive vehicle for transportation, medical supplies, and available assistance on a daily basis. He requires a full-time, medically-trained assistant to travel overnight. He also is at a higher risk for contracting infections or illnesses while traveling and has a reduced ability to recover from such infections or illnesses. DE 33-2 ¶ 4 (Gong Affidavit). Since his injury, all meetings with Plaintiffs have occurred in California. DE 41-5 ¶ 2 (Gong Affidavit). Gong urges that his actions and inactions are important issues in the case and that his live testimony is "critical to RFG's ability to defend itself at trial." DE 33-1, p. 21.

Plaintiffs attempt to minimize Gong's disability and the inconvenience to him by noting that David Gong is not a party to this action and his personal appearance is not required. They propose that his deposition could be taken by videotape in California and used at trial, and that another person could represent RFG in Kentucky. Plaintiffs note that Gong has been able to actively manage a business and "even has competed in wheelchair marathons" since his 2001 accident. Plaintiffs conclude that Gong "is far from incapacitated." DE 38, pp. 32-33. They further argue that transferring the action to California would merely "shift some of the inconvenience of litigating from RFG to Plaintiffs." *Id.* at 33.

Gong replies that his "once-a-year participation in a three- to four-hour, non-competitive, charitable hand-cycle event (which, unlike a wheelchair race, requires only that the operator be able to sit and move his arms in a circular motion) in California and approximately ten (10) miles from Gong's home scarcely qualifies Gong as an 'active athlete,' and certainly does not reflect upon his

11

ability to travel across the country for a trial which will last for days, if not weeks." DE 41, pp. 11-12. He notes that his "participation in the [hand-cycle] event requires adaptive equipment and substantial assistance from a team of volunteers who are specially trained to assist disabled participants." Gong adds that, during his seven-year tenure as CEO/CFO of RFG, he has "only been able to work away from my home office for three to four hours at a time." He "requires daily pain medication in large dosages, making [him] unable to concentrate or work effectively for more than three to four hours at a time." DE 41-5, Gong Affidavit.

Several courts have considered motions to transfer venue for the convenience of a paraplegic or quadriplegic. In *Lapham-Hickey Steel Corp. v. A.G. Edwards Trust Co., FSB*, No. 03 C 3282, 2003 WL 22324877 (N. D. Ill. Oct. 8, 2003), the court granted a motion to transfer from plaintiff's home forum of Illinois to Missouri where Mr. Boxdorfer resided, noting that he is "an essential witness who is quadriplegic and can only travel at great expense and inconvenience." *Id.* at *4. The court said the argument in favor of transfer was "compelling" in light of that fact; the fact that most witnesses, who were not expected to be unwilling, were in the St. Louis area; and that all of the material events took place in Missouri. *Id.*

In *Adkins v. Service Wire Co.*, No. 3:02-0982, 2002 WL 31443208 (W.D. Va. Oct. 31, 2002), a quadriplegic plaintiff brought an action in West Virginia, where the corporate defendant resided and also was only six miles from the plaintiff's home in Ohio. The defendant moved to transfer the case to Houston, Texas, where the accident occurred and where most witnesses were located. Plaintiff said "it will be impossible, as a practical matter, for him to attend or participate in his trial if it occurs in Texas." His last transport from Houston to his home was by air ambulance at a cost of over $30,000. *Id.* at *1. The court noted it would be "significantly inconvenient" for Texas witnesses to attend a trial in West Virginia, but denied the motion to transfer because it would be "practically impossible" for plaintiff to attend a trial in Texas. *Id.* at *5-*6. The court noted the "importance of a litigant's right to attend his own trial." *Id.* at *6.

Similarly, in *Tenet Employee Benefit Plan v. Delgado*, No. 3:98-CV-946, 1998 WL 355471(N.D. Tex. June 26, 1998), the plaintiff brought an action in Texas, but the court granted the New York defendant's motion to transfer to New York because he was a paraplegic. The court said: "It would obviously be extremely burdensome for Defendant to defend himself in Dallas, Texas." *Id.* at *3. It held that "a balancing of the convenience of the parties and the interest of justice clearly weigh in favor of transfer...." *Id.*

In *Nikac v. Pozzi*, 172 F. Supp. 2d 414 (S.D. New York 2001), the court denied a district to district transfer when "[t]he burden of travel on Plaintiff as a paraplegic permanently confined to a wheelchair outweighs the minimal inconvenience to the Westchester Defendants which may arise from court proceedings or possible trial in Manhattan." *Id.* at 417. *England v. ITT Thompson Industries, Inc.* 856 F.2d 1518, 1520 (11th Cir. 1988) was a similar case in which a corporate defendant's motion to transfer was denied since it was difficult for the plaintiff "to travel because of his physical disability." The location more convenient for the disabled plaintiff was chosen, despite the facts that the accident occurred in the corporation's home district and most of the witnesses to the accident resided there. In *Chesler v. Trinity Industries, Inc.*, No. 99 C 3234, 1999 WL 498592 (N. D. Ill. July 6, 1999), the injured plaintiff filed suit in his home forum of Illinois. Defendant, a Texas corporation, moved to transfer the action to Nebraska, where the accident happened and where some of the evidence and witnesses could be found. The court denied the motion saying: "Chesler is basically confined to his home, leaving only with the assistance of a wheelchair. In light of the serious injuries he sustained, travel for Chesler would be more than simply inconvenient; it would be both extremely challenging and costly." *Id.* at *2.

Finally, in *First City Federal Savings Bank v. Register*, 677 F. Supp. 236 (S.D. New York 1988), plaintiff filed a collection action in New York, and defendants moved for a change of venue to their home forum of Florida. One of the defendants, Dr. Register, suffered a stroke five years earlier, had cancer and was confined to a wheelchair. Defendants alleged they were fraudulently

13

induced to purchase a limited partnership unit as a tax write-off, but the partnership did not meet the requirements for a tax credit. The defenses required the testimony of the defendants and witnesses in Florida and Virginia. Defendants were solicited in Florida, and the note and security agreement were induced and executed in Florida. The court granted the motion, saying "[t]he plaintiff's inconvenience in prosecuting its claims in Florida is overwhelmed by the convenience to the defendants and their intended witnesses." *Id.* at 238.

Plaintiffs distinguish these cases by saying that none involved a forum selection clause. DE 38, p. 33, n. 17. That is true, but a forum selection clause is not controlling; it is merely a factor to be balanced. *Kerobo*, 285 F.3d at 537.

In response to the suggestion of using his video deposition at trial, Gong cites two cases holding that videotape depositions are not satisfactory substitutes for live trial testimony. *Vaughn v. Indiana & Ohio Rwy. Co.,* No. 3:07CV3635, 2008 WL 1767075 at *1 (N. D. Ohio. April 14, 2008) (granting motion to transfer venue and noting that video is not a complete substitute for live testimony); *Nilssen v. Everbrite, Inc.*, No. Civ.A. 00-189-JJF, 2001 WL34368396 (D. Delaware February 16, 2001) ("videotaped depositions are not an adequate substitute for live trial testimony, when conducting venue transfer analysis"). This Court's experience agrees with the comment of the United States Supreme Court that to force litigants "to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947).

Gong also argues that his physical presence at trial is "essential" to rebut Plaintiffs' live testimony regarding their negotiations. DE 41, p. 12. He further states that he is the "only RFG employee with sufficient experience and knowledge to effectively act as RFG's corporate representative at trial." DE 41, p. 12, n. 16.

The parties' relative financial condition is also a consideration. VIOCF and Ashland are large, international marketers of automotive and industrial products. Ashland is a Fortune 500

14

company with 2011 sales of approximately $6.5 billion. DE 41-6. RFG is comprised of thirty-five service centers in southern California, and it states it has "substantially less financial resources than Ashland." DE 33-1, p. 22. Gong's inability to pay VIOCF and Ashland for months suggests financial difficulties. If the case were to remain in Kentucky, there would be not only the significant cost and risk of transporting Gong, but also the very substantial cost of transporting other California witnesses.

### 3. Convenience of the Witnesses

Gong provides a list of party witnesses and an extensive (more than seventy) list of non-party witnesses, all of whom he believes to be California residents, and the subject matters for which their testimony would be important. DE 33-2 ¶¶ 34-36 a.-p. Most likely, not **all** of these witnesses would be necessary at trial, but a large number of them may be. Gong lists eleven employees, in addition to himself, whom he says will be key witnesses regarding the claims in this action. *Id.* ¶ 34. Among the non-party witnesses, Gong lists employees of seven distributors with knowledge of contract and trademark issues and the relationship between VIOCF and Henley. DE 33-2, ¶¶ h.-m. Gong also lists three former employees with knowledge of issues in the case. *Id.* at ¶¶ o.-q. Several EZ Lube employees are also listed with the subject of their knowledge, along with a landlord for an EZ Lube location. *Id.* at ¶¶ r., t. Gong frequently references a "conspiracy" between Henley and VIOCF that will also involve California witnesses.[3]

Not long after this Court granted a temporary restraining order against RFG, VIOCF and Ashland moved to find RFG and Gong in contempt for thwarting Plaintiffs' efforts to remove signage at RFG service centers. DE 25. That motion was subsequently withdrawn, but "without prejudice to file another Motion supplementing additional factors of contempt in the future." DE 32. RFG states such a motion would require testimony from numerous California witnesses at its thirty-five stores.

---

[3] RFG notes that it "has not yet filed an Answer or Counterclaim...." DE 41, p. 14.

Plaintiffs mention only two employees "with extensive knowledge of the parties' business dealings at issue" – McKeown and Puckett – who are employees and Kentucky residents. DE 38, p. 34. McKeown traveled to California for the November 29, 2011 meeting with Gong and, presumptively for other meetings. "A witness ... accustomed to traveling for his corporation, and for whom the corporation would bear travel expenses, may face little inconvenience in traveling to a distant jurisdiction." *Thomas v. Home Depot, U.S.A., Inc.,* 131 F. Supp.2d 934, 939 (E.D. Mich. 2001). Plaintiffs do not mention any non-party witnesses.

This Court also takes into consideration not only the convenience of these witnesses, but also the cost of transporting and lodging them in Kentucky for a trial. The large number of witnesses for RFG cause these factors to weigh heavily in favor of transfer.

4. <u>Availability of Process for Unwilling Witnesses</u>

The residences of party employees typically has little weight, as they can be compelled to attend by their employer. The residence of non-party witnesses, however, is very important, as their attendance often must be compelled. Kentucky courts cannot compel attendance of California residents at trial, whereas California courts can compel these witnesses to attend and testify. Fed. R. Civ. P. 45 (a)(2), (b)(2). "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947). This factor also weighs heavily in favor of transfer.

5. <u>Location of and Access to Sources of Proof</u>

There is no accident scene or damaged property to be viewed. Any documentary evidence can be transmitted electronically. Accordingly, this factor is neutral.

6. <u>Familiarity With Applicable Law</u>

Plaintiffs argue that this Court is "more capable than the Southern District of California in resolving matters involving Kentucky law." DE 38, p. 34. However, both courts are equally familiar

with and capable of interpreting the Uniform Commercial Code for contract issues and the Lanham Act for trademark issues. Plaintiffs do not identify any specific Kentucky law issue that would be so much more difficult as to weigh against transfer. To the extent there is a question of which state's or circuit's law would apply, *Van Dusen v. Barrack*, 376 U.S. 612 (1964), provides an answer. "[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Id.* at 639.

### 7. Practical Considerations

Plaintiffs note that this Court already has some familiarity with the case through the motion for injunctive relief and suggest that familiarity would mean more expeditious handling of the case. DE 38, pp. 34-35. So far, this Court has conducted two hearings – the first on February 10 lasting 16 minutes, the second on February 24 lasting 17 minutes. The Preliminary Injunction was based on an agreed order. No significant time would be lost while a California court acquires this familiarity. No answer has been filed and no discovery undertaken. This factor is basically neutral.

### B. Weighing the Factors

There would also be some slight inconvenience and expense to Plaintiffs associated with travel to a California forum. Also weighing against transfer are the Plaintiffs' choice of forum and the forum selection clause, although the lack of connections with the claims weaken the impact. The Court also recognizes that a "forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong*, 589 F.3d at 828.

Weighing in favor of transfer is the important interest of David Gong in attending trial and defending the company he owns. *Adkins*, 2002 WL 31443208 at *5-*6. Gong is an essential witness who is a quadriplegic and can only travel at great expense, inconvenience, and risk of illness. *See Lapham-Hickey*, 2003 WL 22324877 at *4; *Tenet,* 1998 WL 355471 at *3; *Nikac* 172

F. Supp. 2d at 417; *Chesler*, 1999 WL 498592 at *2. This Court finds the argument in favor of transfer to accommodate a quadriplegic critical witness "compelling" under the circumstances of this case. Other factors strongly favoring transfer are the location of most witnesses and the availability of compulsory process for the non-party, unwilling witnesses. The expense and inconvenience of transporting numerous California witnesses to Kentucky is much greater. The risks that important witnesses would be unavailable and that a substantial personal sacrifice by Gong may be required if the case stays in Kentucky are too great and are contrary to the interests of justice. RFG and Gong have met their burden of a strong showing that the forum selection clause is so unjust that it should be set aside. This is an extraordinary case involving a set of circumstances that are not likely to occur again. Justice and fairness require that this case be transferred to the Southern District of California.

The Court recognizes that the waiver language in Paragraph 23 of the We Feature might be argued to be independent from the forum selection clause and to preclude any consideration of a motion to transfer. In that event, the Court states it would *sua sponte* transfer the case to California under 28 U.S.C. § 1404(a). *See Wong*, 589 F.3d at 825 (dismissal of case "sua sponte for forum non conveniens"). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

### III. CONCLUSION

**IT IS ORDERED** that:

A. Defendant's motion to transfer venue to the Southern District of California [DE 33] is **GRANTED;**

B.  The Clerk of the Court is **DIRECTED** to **TRANSFER** this case to the Southern District of California; and

C.  Defendant's alternative motion to dismiss is **DENIED AS MOOT**.

This August 22, 2012.

Signed By:

*Karl S. Forester*  KSF

United States Senior Judge