**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALVOLINE INSTANT OIL CHANGE FRANCHISING, INC.; ASHLAND CONSUMER MARKETS, a commercial unit of ASHLAND, INC.; ASHLAND LICENSING AND INTELLECTUAL PROPERTY LLC; HENLEY ENTERPRISES, INC.; HENLEY PACIFIC LLC; HENLEY PACIFIC LA LLC; and HENLEY PACIFIC SD LLC,<br><br>                Plaintiffs,<br>  vs.<br>RFG OIL, INC.,<br>                Defendant,<br>_____<br>RFG OIL, INC.,<br>                Counter-Claimant,<br>  vs.<br>VALVOLINE INSTANT OIL CHANGE FRANCHISING, INC.; ASHLAND CONSUMER MARKETS, a commercial unit of ASHLAND, INC.; ASHLAND LICENSING AND INTELLECTUAL PROPERTY LLC; HENLEY ENTERPRISES, INC.; HENLEY PACIFIC LLC; HENLEY PACIFIC LA LLC; and HENLEY PACIFIC SD LLC,<br>                Counter-Defendants. | CASE NO. 12-cv-2079-GPC-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTER-DEFENDANTS' MOTION TO DISMISS RFG'S COUNTERCLAIM**<br><br>[ECF No. 58.] |

## INTRODUCTION

The instant case was filed by Plaintiffs Valvoline Instant Oil Change Franchising, Inc. ("VIOCF"), Ashland Consumer Markets, a commercial unit of Ashland, Inc. ("Ashland")[1], Ashland Licensing and Intellectual Property LLC ("ALIP"), Henley Enterprises, Inc., Henley Pacific, LLC, Henley Pacific LA LLC, and Henley Pacific SD LLC (collectively "Plaintiffs") against Defendant RFG Oil, Inc. ("RFG") on February 8, 2012 in the United States District Court for the Eastern District of Kentucky, and transferred to this Court on August 22, 2012 pursuant to 28 U.S.C. § 1404(a). (ECF No. 42.) On September 5, 2012, RFG filed a Counterclaim against all Plaintiffs. (ECF No. 47.) Presently before the Court is the Motion of Valvoline Instant Oil Change Franchising, Inc., Ashland Consumer Markets, and Ashland Licensing and Intellectual Property LLC (collectively the "VIOCF Counter-Defendants") to dismiss five counts of RFG's Counterclaim: the First Count for breach of contract; the Fourth Count for intentional interference with prospective economic advantage; the Fifth Count for breach of confidence; the Sixth Count for fraudulent misrepresentation; and the Seventh Count for breach of implied covenant of good faith and fair dealing. (ECF No. 58.) Having considered the parties' submissions and for the reasons set forth below, the Court **GRANTS** the VIOCF Counter-Defendants' Motion to Dismiss as to Counts One, Five, Six, and Seven, and **DENIES** the VIOCF Counter-Defendants' Motion to Dismiss as to Count Four.

## BACKGROUND[2]

In 1990, RFG opened its first location as a Valvoline Instant Oil Change franchisee with VIOCF as franchisor. By 2011, RFG owned and operated approximately forty (40) oil change and quick lube centers in and around Southern

---

[1] Ashland is otherwise known as "Valvoline" and does business as "Valvoline Instant Oil Change."

[2] The factual information in this section is taken from RFG's Counterclaim. (ECF No. 47.)

California, all of which were Valvoline Instant Oil Change franchises. Each of RFG's franchise locations was governed by a series of License Agreements, Sign and Equipment Leases, and Supply Agreements (collectively referred to as "Valvoline Agreements") that were entered into between RFG and VIOCF, Ashland, and ALIP.

Pursuant to each of the License Agreements, VIOCF promised not to grant a license to another Valvoline franchisee within a two mile radius of the store to which the License Agreement pertained. Furthermore, from about 1991 to 1999 VIOCF and RFG entered into a Development Agreement in which "VIOCF granted RFG exclusive rights to all of San Diego County and portions of Los Angeles County." (ECF No. 47 ¶ 22.) Although VIOCF did not renew the Development Agreement after 1999, "VIOCF verbally assured RFG that it would continue to have exclusive rights to San Diego County." (Id. ¶ 23.) From 1999 to 2010, VIOCF advised RFG of preliminary discussions with potential franchisees in Southern California, and would not grant franchise licenses to potential franchisees if RFG objected to the location as an encroachment on RFG's territory.

In late 2010, RFG acquired 16 new Valvoline franchises for the Southern California market. As part of the transaction, "VIOCF agreed to provide RFG with substantial financial assistance, cash incentives, credits to amounts due VIOCF and Ashland, and commitments for future financial assistance for replacing the signs for the 16 new Valvoline stores." (Id. ¶ 28.) However, RFG alleges "VIOCF failed to provide the promised financial assistance for the new locations and RFG began to experience financial struggles." (Id. ¶ 29.)

In late 2010, the Henley defendants,[3] another VIOCF franchisee primarily operating on the East Coast, Florida and the Midwest, began communicating an interest to VIOCF about expanding its store locations to Southern California. Specifically, Henley wanted to purchase seventy-two (72) EZ-Lube store locations in Southern

---

[3] Henley Enterprises, Inc., Henley Pacific LLC, Henley Pacific LA LLC, and Henley Pacific SD LLC shall be referred to herein as "Henley."

California and convert them to Valvoline franchises. At least fourteen (14) of the desired EZ-Lube locations were located within a two mile radius of an RFG Valvoline franchise, which prevented Henley from converting all 72 EZ-Lube locations into Valvoline franchises while the RFG-VIOCF License Agreements were still in force.

In late 2010, Henley began negotiating with RFG for the purchase of RFG's Valvoline locations. Henley represented that it wanted to enter into a new venture with RFG, and that as part of this venture RFG would own and operate RFG's locations as well as the 72 EZ-Lube locations. However, RFG alleges Henley never wanted to enter into a new venture with RFG and simply wanted to acquire RFG's locations at the lowest possible cost. Furthermore, RFG alleges "VIOCF conspired with Henley to oust RFG from the Southern California market by wrongfully attempting to terminate RFG's license agreements and withholding VIOCF's normal financial support to its franchisee, RFG" because VIOCF would "greatly benefit" from Henley entering the Southern California market. (Id. ¶ 3.)

In January 2011, VIOCF notified RFG of an alleged breach of the Valvoline Agreements, based on RFG's alleged failure to timely pay for products from VIOCF. RFG disputed that it was in breach of the Valvoline Agreements.

During the twenty-three (23) years that RFG had been a Valvoline franchisee, RFG had occasionally been unable to pay VIOCF in full pursuant to the terms of the Valvoline Agreements. On each of those prior occasions RFG and Valvoline were able to negotiate extensions, credits, or financing so that VIOCF was ultimately paid in full by RFG. This time, however, VIOCF demanded that RFG commence paying in advance for VIOCF products. In addition, "VIOCF assured RFG that it would not take action on the alleged breaches, as long as RFG continued negotiating with Henley regarding the sale of the RFG locations and RFG continued to pay VIOCF for royalties and product purchases." (Id. ¶ 45.)

Subsequently, RFG pre-paid for Valvoline products that were not delivered. In addition, VIOCF "over-charged RFG for products and VIOCF refused to adjust the

prices." (Id. ¶ 46.) This led RFG to purchase Valvoline products from other merchants at retail prices, after it had already pre-paid for a product that was never delivered, resulting in severe financial hardship for RFG in the daily operations of its Valvoline locations.

Further, RFG alleges "VIOCF was providing Henley with confidential information regarding RFG's business operations including, but not limited to, daily car count averages, its average ticket, RFG's negotiation strategy (which RFG gad [sic] previously disclosed to VIOCF in confidence) and RFG's financial information in order to give Henley an advantage over RFG." (Id. ¶ 49.)

By late 2011, Henley needed to finalize its purchase of the 72 EZ-Lube locations, but Henley could not convert all of these locations to Valvoline franchises because RFG had not transferred its locations to Henley.

On November 29, 2011, VIOCF informed RFG that it would "terminate" RFG's License Agreements effective November 30, 2011. VIOCF told RFG that Ashland demanded immediate payment of over $14 million and would take immediate action to close RFG's remaining Valvoline locations, but that if RFG signed a termination agreement and executed a "We Feature Agreement,"[4] RFG could have a ninety (90) day extension on the closing of the Valvoline stores.

RFG was told that it had until December 5, 2011 at noon to execute the documents. RFG had several conversations with VIOCF representatives regarding the agreements and requested modifications, but RFG never executed the final documents.

On December 5, 2011, three hours after the noon deadline passed, and not having received the executed agreements from RFG, VIOCF and Ashland presented RFG with a revised Termination Agreement and We Feature Agreement. On December 6, 2011, David Gong, one of two shareholders for RFG, executed the Termination agreement and the We Feature Agreement, subject to modifications that Mr. Gong

---

[4] A "We Feature Agreement" allows stores to carry Valvoline products without being a franchisee.

made to the We Feature Agreement. Jeff Gong, the other shareholder of RFG, did not execute either agreement. As a guarantor of the Valvoline Agreements, Jeff Gong's signature was required on the Termination Agreement.

On December 6, 2011, "VIOCF and Ashland rejected the modifications made to the We Feature Agreement and demanded that RFG execute an unmodified version." (Id. ¶ 60.) However, from December 6, 2011 to December 14, 2011, VIOCF and Ashland negotiated with RFG over modifications to the We Feature Agreement.

On December 14, 2011, Ashland executed the modified We Feature Agreement that it had previously rejected. But on December 16, 2011, "Ashland stated it disagreed with and rejected RFG's modifications and repudiated the document." (Id. ¶ 63.)

Thereafter, the parties "maintained the status quo and RFG continued its operations of its locations in the same manner it had for the last 23 years. During this period, RFG and Henley continued their negotiations to form a joint venture or to have Henley acquire RFG's locations." (Id. ¶ 64.)

In February 2012, "RFG learned of Henley's impending deal to close on the 72 EZ Lube locations and that Henley was now refusing to pay any compensation to RFG to acquire its stores." (Id. ¶ 65.) This information led RFG to believe that Henley had not been negotiating with RFG with the intention of ever purchasing the RFG stores in good faith.

On or about February 6, 2012, RFG sent a letter notifying VIOCF, Ashland, and Henley that RFG still considered itself a Valvoline franchisee, and that as such "RFG had substantial rights which would be violated by Henley's acquisition of the EZ Lube Locations." (Id. ¶ 66.)

On February 8, 2012, VIOCF, Ashland and Henley filed this action against RFG in the Eastern District of Kentucky, alleging trademark infringement, unfair competition, breach of contract, tortious interference, and breach of implied covenant of good faith and fair dealing. (ECF No. 1.)

On September 5, 2012, RFG filed a Counterclaim against all Plaintiffs. (ECF No. 47.) In its Counterclaim, RFG lists ten Counts: (1) breach of contract as to VIOCF, Ashland, and ALIP; (2) declaratory relief as to VIOCF, Ashland, and ALIP that the Valvoline Agreements are enforceable; (3) declaratory relief as to VIOCF, Ashland, and ALIP that the We Feature Agreement was never enforceable; (4) intentional interference with prospective economic advantage as to VIOCF, Ashland, and ALIP; (5) breach of confidence as to VIOCF and Ashland; (6) fraudulent misrepresentation as to VIOCF, Ashland, and ALIP; (7) breach of implied covenant of good faith and fair dealing as to VIOCF, Ashland, and ALIP; (8) misappropriation of trade secret as to VIOCF, Ashland, and ALIP; (9) intentional interference with prospective economic advantage as to Henley; and (10) breach of confidence as to Henley. (Id.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544. 547 (2007)). In reviewing a motion to dismiss under Rule 12(b)(6), the court assumes the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless

the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658.

**DISCUSSION**

The VIOCF Counter-Defendants move to dismiss five counts of RFG's Counterclaim: the First Count for breach of contract; the Fourth Count for intentional interference with prospective economic advantage; the Fifth Count for breach of confidence; the Sixth Count for fraudulent misrepresentation; and the Seventh Count for breach of implied covenant of good faith and fair dealing. (ECF No. 58.) For the reasons stated below, the VIOCF Counter-Defendants' Motion must be granted as to all claims except for RFG's Fourth Count for intentional interference with prospective economic advantage.

**I.     Breach of Contract**

The VIOCF Counter-Defendants argue that RFG fails to state a claim for breach of contract against the VIOCF Counter-Defendants because "RFG has not properly pled verbatim the material terms of the contract (or attached a copy of the contract) upon which the cause of action against VIOCF Counter-Defendants is based." (ECF No. 58 at 2:17-24.) RFG argues that RFG is not required by the Federal Rules of Civil Procedure to attach a contract to its complaint, and that attaching the relevant contract for each RFG location involved in this dispute would be overly burdensome and inefficient. (ECF No. 66 at 13:1-22.)

To state a claim for breach of contract, a plaintiff must plead the existence of the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff resulting from defendant's breach. Low v LinkedIn Corp., 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (quoting Gautier v. General Tel. Co., 234 Cal.

App. 2d 302, 305 (1965)). Furthermore, "if the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." Otworth v. S. Pac. Transp. Co., 212 Cal. App. 3d 452, 459 (1985).

Here, RFG fails to state a claim for breach of contract because RFG has not attached the relevant contract to its complaint or included verbatim the terms RFG alleges were breached by the VIOCF Counter-Defendants. In its Opposition, RFG cites a First Circuit case, Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991), for the proposition that RFG is not required to attach the contract to its counterclaim. (ECF No. 66 at 13.) However, the court in Romani merely addressed whether the defendant in that case could properly introduce documents in a motion to dismiss without converting the motion into one for summary judgment. Romani, 929 F.2d at 879 n.3. As the VIOCF Counter-Defendants note in their Reply to RFG's Opposition, various other District Courts in this state have upheld the rule in Otworth. See, e.g., Ayala v. Bank of America, No. 09cv1946-BTM (NLS), 2010 WL 1568577 at *2 (S.D. Cal. Apr. 16, 2010); Yanik v. Countrywide Home Loans, Inc., No. CV 10-6268 CAS(RZx), 2010 WL 4256312 at *4 (E.D. Cal. Oct. 18, 2010).

RFG also argues that adhering to the rule in Otworth would be "overly burdensome" and "inefficient." (ECF No. 66 at 13:18-19.) However, RFG cites no authority for the proposition that an abundance of documents may excuse a party from attaching such documents to its pleading or including the verbatim terms relevant to the party's claim for breach of contract. RFG's argument is also unpersuasive because, as RFG itself points out in its Opposition, the contracts between RFG and the VCIOF Counter-Defendants were "virtually identical in most situations." (ECF No. 66 at 13:15.) If the contracts pertaining to the various RFG Valvoline locations are indeed virtually identical, then the terms RFG claims were breached by the VIOCF Counter-Defendants may be the same across all of the contracts, in which case RFG could simply include such terms verbatim in the body of its complaint. Furthermore, the fact

that Plaintiffs attached representative contracts to their First Amended Complaint against RFG and identified the relevant provisions RFG allegedly breached lends credence to the VIOCF Counter-Defendants' argument that it would not be overly burdensome for RFG to do the same. (ECF No. 59-1 Ex. A-G.)

Because RFG has failed to put the VIOCF Counter-Defendants on notice by specifying the verbatim terms the VIOCF Counter-Defendants allegedly breached or attaching the relevant contracts to its Counterclaim, RFG has not adequately stated a claim for breach of contract against the VIOCF Counter-Defendants.

## II. Intentional Interference with Prospective Economic Advantage

The VIOCF Counter-Defendants argue that RFG fails to state a claim for intentional interference with prospective economic advantage because the VIOCF Counter-Defendants "are not strangers or outsiders capable of wrongfully interfering with" the negotiation between RFG and Henley that serves as the basis for RFG's claim, and therefore "are legally privileged to assert their rights with respect to their own franchise." (ECF No. 58 at 2-3.) RFG argues that the argument put forth by the VIOCF Counter-Defendants does not apply to this case because the actions taken by the VIOCF Counter-Defendants "were both wrongful and intended to harm RFG." (ECF No. 66 at 9-10.)

A defendant may be liable for intentional interference with prospective economic advantage where plaintiff shows: "(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party." Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 944 (2008).

However, one who has a financial interest in the business of another may

intentionally cause the other not to enter into a contractual relation with a third party without being held liable for intentional interference with prospective economic advantage as long as the actor "does not employ wrongful means" and "acts to protect his interest from being prejudiced by the relation." Hamro v. Shell Oil Co., 674 F.2d 784, 789-90 (9th Cir. 1982) (quoting Restatement (Second) of Torts § 769 (1979)). The type of financial interest privileged by this rule is "'an interest in the nature of an investment,' such as that of a part owner, a partner or a stockholder." Id. at 790 (quoting Restatement (Second) of Torts § 769 cmt. c). Because privilege is an affirmative defense which defendants have the burden of proving, Robinson v. State Farm Ins., C 94 3304 TEH, 1996 WL 31850 at *3 (N.D. Cal. Jan. 16, 1996), and the issue of whether a defendant employed wrongful means or acted to harm the plaintiff often turns on the defendant's state of mind, the existence of the privilege "cannot normally be satisfactorily determined on the basis of pleadings alone." Sade Shoe Co. v. Oschin & Snyder, 162 Cal. App. 3d 1174, 1181 (1984) (quoting Culcal Stylco, Inc. v. Vornado, Inc., 26 Cal. App. 3d 879, 883 (1972)).

Here, the VIOCF Counter-Defendants do not dispute that RFG has pled facts sufficient to state a prima facie claim for intentional interference with prospective economic advantage, but rather argue that RFG fails to state a claim because the VIOCF Counter-Defendants' actions were privileged. (ECF Nos. 58, 67.) Because privilege is an affirmative defense and the issue of whether the VIOCF Counter-Defendants acted to cause harm to RFG depends on the VIOCF Counter-Defendants' motive, it would be inappropriate for the Court to decide the issue at this stage in the litigation. Thus, the VIOCF Counter-Defendant's motion to dismiss RFG's counterclaim must be denied as it pertains to RFG's cause of action for intentional interference with prospective economic advantage.

### III. Breach of Confidence

The VIOCF Counter-Defendants argue that RFG fails to state a claim for breach of confidence as to the VIOCF Counter-Defendants because "RFG's breach of

confidence claim is based on the same nucleus of facts as RFG's claim for misappropriation of trade secrets" and is thus preempted by the California Uniform Trade Secrets Act ("CUTSA"). (ECF No. 58-1 at 9-10.) RFG argues that the claims for breach of confidence and misappropriation of trade secrets are not based on the same nucleus of facts because the breach of confidence claim involves not only the alleged disclosure of confidential customer lists but also the alleged disclosure of financial information. (ECF No. 66 at 11.)

The CUTSA does not affect "civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7. Under California law, this means that the CUTSA does supersede other civil remedies to the extent that a party's claim for relief is based on the same nucleus of facts as a claim for misappropriation of trade secrets. K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009); Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005). Furthermore, the CUTSA supersedes other civil remedies where the claim for relief is based on the misappropriation of confidential or proprietary information, even if such information fails to qualify as a trade secret under the CUTSA. SunPower Corp. v. SolarCity Corp., 12-CV-00694-LHK, 2012 WL 6160472 at *7 (N.D. Cal. Dec. 11, 2012); Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 239 n.22 (2010) (disapproved of on other grounds by Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011)). Although a displacement provision contained in the Model Uniform Trade Secrets Act ("MUTSA") may allow plaintiffs in other jurisdictions to maintain separate causes of action where a claim for relief includes other factual allegations in addition to misuse or misappropriation of trade secrets, "California has rejected that particular provision of the uniform act in favor of an entirely different one." K.C. Multimedia, 171 Cal. App. 4th at 956-59 (rejecting a "narrow interpretation of preemption" with respect to the CUTSA and holding that plaintiff's claims for breach of confidence, interference with contract, and unfair competition were preempted by the CUTSA despite added factual

allegations in those claims).

Here, RFG's cause of action for breach of confidence as to the VIOCF Counter-Defendants is based on the allegation that the VIOCF Counter-Defendants provided Henley with RFG's confidential customer lists, as well as financial performance information for each of RFG's locations, in an attempt to oust RFG from the Southern California market. (ECF No. 47 at 11-12.) RFG's claim for misappropriation of trade secrets, meanwhile, is based solely on the VIOCF Counter-Defendants' alleged disclosure to Henley of RFG's confidential customer lists. (Id. at 13 ¶ 109.) However, given that the California legislature rejected an approach to the MUTSA that would allow RFG to maintain separate causes of action in this type of situation, the added factual allegations in RFG's breach of confidence cause of action are insufficient to differentiate it from RFG's claim of misappropriation of trade secrets and thus both claims are based on the same nucleus of facts.[5] Therefore, RFG's claim for breach of confidence as to the VIOCF Counter-Defendants is preempted by the CUTSA and must be dismissed.

## IV. Fraudulent Misrepresentation

The VIOCF Counter-Defendants argue that RFG fails to state a claim for fraudulent misrepresentation (1) because RFG's claim is improperly based upon alleged promises concerning future actions rather than statements involving past or existing facts, and (2) because RFG fails to "put the VIOCF [Counter-]Defendants on notice as to who allegedly made [fraudulent] representations to RFG, or under what authority that individual (or individuals) purported to speak (or write)." (ECF No. 58-1 at 10-11.) RFG argues that allegedly fraudulent statements made to RFG about what VIOCF intended to do constitute representations of existing facts sufficient to state a

---

[5] Even if RFG's cause of action for breach of confidence rested solely upon the alleged misappropriation of financial information, RFG would still fail to state a claim. Although such financial information may not classify as a trade secret under the CUTSA, it is confidential information and thus RFG's breach of confidence cause of action would be preempted by the CUTSA.

claim for fraudulent misrepresentation, and that RFG's allegations are specific enough to survive a motion to dismiss. (ECF No. 66 at 12.)

To state a claim for fraudulent misrepresentation, RFG must allege (1) the VIOCF Counter-Defendants made a false representation of fact; (2) the VIOCF Counter-Defendants knew the representation was false at the time of the representation; (3) the VIOCF Counter-Defendants intended that RFG would rely on the representation; (4) RFG reasonably relied on the representation; and (5) RFG suffered damages as a result of the false representation. 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 772, p. 1121; Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 974 (1997); Hunter v. Up-Right, Inc., 6 Cal. 4th 1174, 1184 (1993).

Furthermore, "[f]raudulent representations, to constitute ground for relief, must be as to existing and material facts; predictions of future events are ordinarily considered non-actionable expressions of opinion." Richard P. v. Vista Del Mar Child Care Serv., 106 Cal. App. 3d 860, 865 (1980). However, "while fraud requires the intentional misrepresentation of a fact, the speaker's intention may constitute a fact for this purpose." Yield Dynamics, Inc. v. TEA Sys. Corp., 154 Cal. App. 4th 547, 575 (2007). Thus, where a promise is made without the intention to perform "there is an implied misrepresentation of fact that may be actionable fraud." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996); see also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 781, p. 1131 ("A statement of what the defendant or some third person intends to do relates to an existing state of mind, and is a representation of fact.").

In addition, "'[e]very element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made.'" Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991) (quoting Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, 57 Cal. App. 3d 104, 109 (1976)). Where a fraud action is being maintained against a corporation, a claimant must "allege the names of the persons who made the allegedly fraudulent representations, their

authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Id.

Here, RFG alleges the VIOCF Counter-Defendants made a false representation when they "assured RFG that it would not take on RFG's alleged breaches of the Valvoline Agreements, as long as RFG continued negotiating with Henley regarding the sale of the RFG locations and RFG began to pre-pay for its products." (ECF No. 47 ¶ 95.) Such assurances, as false representations of the VIOCF Counter-Defendants' intention to perform on a promise, would constitute misrepresentations of fact sufficient to state a claim for fraud. However, RFG has failed to state a claim for fraudulent misrepresentation because RFG's allegations lack the specificity required in a fraud action against a corporation. RFG does not provide the names of the persons who made the allegedly fraudulent misrepresentations, their authority to speak, to whom they spoke, what they said or wrote, or when it was said or written. Thus, the VIOCF Counter-Defendants' motion to dismiss must be granted with respect to RFG's claim for fraudulent misrepresentation.

## V. Breach of Implied Covenant of Good Faith and Fair Dealing

The VIOCF Counter-Defendants argue that RFG fails to state a claim for breach of implied covenant of good faith and fair dealing because (1) the claim is superfluous and improper in that it "does not go beyond the statement of a breach of express contractual terms and seeks the same relief sought in a breach of contract claim" and (2) the claim is improper because "there is no recognized cause of action for tortious breach of contract outside of the insurance context." (ECF No. 58 at 3-4.) RFG argues that the claim for breach of implied covenant of good faith and fair dealing is not superfluous, and that although "courts generally enforce this breach *via* contract law, and not with the imposition of tort remedies, RFG is still entitled to bring the claim." (ECF No. 66 at 10.)

"Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." Jonathan Neil & Associates, Inc. v. Jones, 33

Cal. 4th 917, 937 (2004) (quoting Restatement (Second) of Contracts § 205 (1981)). However, if a plaintiff's allegations of a breach of such duty "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990). Thus, where a plaintiff has alleged both breach of contract and breach of implied covenant of good faith and fair dealing, "the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain a tort recovery." Id.

Although "in insurance cases there is a well-developed history recognizing a tort remedy for a breach of the implied covenant," such recognition is dependent on the existence of a "special relationship" between the insurer and the insured and "has little authoritative support" outside of the insurance context. Id. at 1395-99 (holding that plaintiff could not recover in tort for breach of implied covenant of good faith and fair dealing in a case arising out of "a rather common commercial banking transaction"). For a plaintiff to recover tort damages for breach of implied covenant of good faith and fair dealing outside of the insurance context, "'(1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.'" Id. at 1398 (quoting Wallis v. Superior Court, 160 Cal. App. 3d 1109, 1118 (1984)). The relationship between franchisor and franchisee has been held insufficient to support the recovery of tort damages for breach of the implied covenant. Little Oil Co., Inc. v. Atl. Richfield Co.,

852 F.2d 441, 447 (9th Cir. 1988).

Here, RFG merely states the VIOCF Counter-Defendants breached the implied covenant of good faith and fair dealing "[b]y virtue of its bad faith conduct." (ECF No. 47 ¶ 104.) Such a statement is insufficient to demonstrate that RFG relies on more than mere contract breach as the factual basis for its claim. As far as damages, RFG seeks in both causes of action "an amount in excess of $10,000,000.00 to be determined at trial." (Id. ¶¶ 71, 105.) Because RFG's allegations do not go beyond a mere statement of contract breach and RFG seeks the exact same damages as in its cause of action for breach of contract, RFG's claim for breach of implied covenant of good faith and fair dealing is superfluous and must be dismissed.

Furthermore, the relationship between RFG and the VIOCF Counter-Defendants is not the type that would support the availability of tort remedies for breach of the implied covenant. As a franchisee, RFG's motivation for entering into a contract was profit, rather than the peace of mind and security that motivates people to enter into insurance contracts. RFG has not given any reasons why ordinary contract damages would be inadequate in this case, or why RFG was in a special position of vulnerability.

RFG's claim for breach of implied covenant of good faith and fair dealing is superfluous to its claim for breach of contract, and the relationship between RFG and the VIOCF Counter-Defendants does not support the recovery of tort damages in this case. Thus, RFG's cause of action for breach of the implied covenant must be dismissed.

**CONCLUSION**

For the reasons set forth above, the VIOCF Counter-Defendants' Motion to Dismiss RFG's Counterclaim is **GRANTED** as to the First Count for breach of contract, Fifth Count for breach of confidence, Sixth Count for fraudulent misrepresentation, and Seventh Count for breach of implied covenant of good faith and fair dealing. The VIOCF Counter-Defendants' Motion is **DENIED** as to RFG's Fourth

Count for intentional interference with prospective economic advantage. RFG is granted leave to file an amended counterclaim no later than 20 days from the date this order is filed.

**IT IS SO ORDERED.**

DATED: August 5, 2013

HON. GONZALO P. CURIEL
United States District Judge