1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  VALVOLINE INSTANT OIL CHANGE FRANCHISING, et al., | CASE NO. 12cv2079-GPC(KSC) |
| 11 | ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE |
| 12                          Plaintiffs,  vs. | |
| 13 | [Doc. No. 83.] |
| 14  RFG OIL, INC., | |
| 15                          Defendant. | |
| 16  AND RELATED COUNTERCLAIM. | |
| 17 | |

18      Before the Court is the parties' Joint Motion for Determination of Discovery

19  Dispute. [Doc. No. 83.] In the Joint Motion, defendant RFG Oil, Inc. ("RFG") seeks an

20  order compelling plaintiffs to supplement their responses to various requests for

21  production of documents and to produce all responsive documents.  For the reasons

22  outlined below, the Court finds that defendant RFG's request must be GRANTED in

23  part and DENIED in part.

24                    ***Procedural and Factual Background***

25      Plaintiffs Valvoline Instant Oil Change Franchising, Inc. ("VIOCF"); Ashland

26  Consumer Markets, a commercial unit of Ashland, Inc. ("Ashland"); Ashland Licensing

27  and Intellectual Property LLC ("ALIP"); Henley Enterprises, Inc.; Henley Pacific, LLC;

28  Henley Pacific LA LLC; and Henley Pacific SD LLC ("Henley") filed a Complaint

against RFG on February 8, 2012. [Doc. No. 1.] On September 5, 2012, RFG answered the Complaint and filed a Counterclaim against all plaintiffs. [Doc. No. 47.]   On October 10, 2012, plaintiffs filed a First Amended Complaint. [Doc. No. 59.] RFG filed an Answer to the First Amended Complaint and a Counterclaim on October 19, 2012. [Doc. No. 63.] RFG filed a First Amended Counterclaim on August 26, 2013. [Doc. No. 75.]

### A.   *The First Amended Complaint.*

The First Amended Complaint alleges: (1) trademark infringement of the We Feature marks in violation of 15 U.S.C. § 1114; (2) trademark infringement of the VIOCF marks in violation of 15 U.S.C. § 1114; (3) unfair competition in violation of 15 U.S.C. § 1125(a); (4) violation of California Business & Professions Code section 17200; (5) declaratory judgement that the We Feature Agreement is terminated; (6) declaratory judgment that the Valvoline Group Agreements are terminated; (7) breach of contract for liquidated damages under the We Feature Agreement; (8) breach of contract for compensatory damages under the Valvoline Group Agreements; (9) tortious interference with business expectancy as to Ashland and VIOCF; (10) tortious interference with business expectancy as to Henley; and (11) injunctive relief. [Doc. No. 59, at pp. 14-26.]

According to the First Amended Complaint, plaintiff VIOCF and defendant RFG entered into certain renewable License Agreements and Sign and Equipment Leases that became effective in 1990.  These agreements allowed RFG to establish and operate a number of Valvoline Instant Oil Change centers using the Valvoline Instant Oil Change name and certain VIOCF trademarks. [Doc. No. 59, at p. 4.] At the same time, plaintiff Ashland entered into related Supply Agreements with RFG to purchase Valvoline products for use in operating the Valvoline Instant Oil Change centers.  All of these agreements are collectively referred to in the First Amended Complaint as the "Valvoline Group Agreements." [Doc. No. 59, at p. 5.]

/ / /

Plaintiffs VIOCF/Ashland terminated all of the Valvoline Group Agreements as of November 30, 2011 for failure to pay amounts due under the Supply Agreements. [Doc. No. 59, at p. 6.] As a result of this termination, RFG was no longer a Valvoline franchisee. [Doc. No. 59, at p. 6.] However, at the time they terminated the Valvoline Group Agreements, plaintiffs allege that RFG was offered a "new arrangement" known as a "We Feature National Sales Account" in order to avoid litigation and other problems. [Doc. No. 59, at pp. 7-8.] According to plaintiffs, the new We Feature Agreement went into effect in December 2011. [Doc. No. 59, at p. 7.]

Under the new We Feature Agreement, RFG was allowed an opportunity to repay the amounts owed under the prior Valvoline Group Agreements and to "feature" the Valvoline brand at its service centers but without operating under the franchisee name "Valvoline Instant Oil Change." [Doc. No. 59, at p. 6.] The We Feature Agreement required RFG to "purchase one-hundred percent (100%) of its requirements of bulk motor oil" from Ashland for a period of three years.  In addition, RFG was not permitted to use or sell "any bulk products that are competitive with the Valvoline brand." [Doc. No. 59, at pp. 8, 12.]  However, plaintiffs discovered soon after the We Feature Agreement went into effect that RFG was purchasing bulk products from other entities, commingling these non-Valvoline oil products with Valvoline products in bulk storage tanks, and then telling customers they were selling "genuine Valvoline product." [Doc. No. 59, at p. 8.] As a result, plaintiffs claim they had a right to terminate the We Feature Agreement immediately.  [Doc. No.  59, at p 12-13.]

By letter dated February 3, 2012, RFG was notified that it was in breach of the We Feature Agreement and was advised to "cease and desist" from commingling non-Valvoline oil with Valvoline oil. [Doc. No. 59, at pp. 13-14.] RFG thereafter indicated on February 7, 2012 that it intended to continue its practice of selling non-Valvoline oil to customers.  [Doc. No. 59, at p. 14.] As a result, plaintiffs believe they were entitled to immediately terminate the We Feature Agreement. [Doc. No. 59, at p. 19-20.]

Plaintiff Henley also has a franchisee relationship with VIOCF and Ashland and

has a large number of Valvoline franchise sites in various parts of the United States. [Doc. No. 59, at p. 24-25; Doc. No. 84, at p. 3; Doc. No. 75, at p. 5.] In 2008, Henley became interested in acquiring 72 EZ Lube stores that had previously been in bankruptcy. [Doc. No. 84, at p. 3.]  In 2010, Henley began negotiating with Goldman Sachs to acquire these EZ Lube stores. [Doc. No. 84, at p. 3; Doc. No. 84-1, at p. 8.] In December 2011, Henley agreed to purchase the EZ Lube stores, and the transaction closed in March 2012. [Doc. No. 84, at p. 4; Doc. No. 84-1, at pp. 8-9.]

The First Amended Complaint alleges that RFG "maliciously" interfered with Henley's business relationships with EZ Lube, Ashland, and VIOCF.  [Doc. No. 59, at pp. 9-10, 24-25.] Specifically, it is alleged that on February 3, 2012, RFG "maliciously interfered" with Henley's business expectancy with Ashland and VIOCF by sending a letter to Ashland and VIOCF demanding that they "cease and desist from any and all further communications with Henley regarding the purchase and operation of the EZ Lube service centers." [Doc. No. 59, at pp. 24-25.] In addition, on February 6, 2012, it is alleged that RFG "maliciously interfered with Henley's contractual relationship with EZ Lube and its business expectancy with Ashland and VIOCF by sending a letter to Henley demanding that Henley cease and desist from any and all further communications with Ashland, VIOCF and EZ Lube regarding the purchase and operation of the EZ Lube service centers."  [Doc. No. 59, at pp. 24-25.]

### B.   *Plaintiffs' Motion for Partial Summary Judgment.*

On March 31, 2014, plaintiffs filed a Motion for Partial Summary Judgment. [Doc. No. 87.]  In this Motion, plaintiffs sought summary adjudication of the fifth and six causes of action in the First Amended Complaint. [Doc. No. 96, at p. 2.] These causes of action seek a declaration by the District Court that plaintiff VIOCF and Ashland properly terminated the Valvoline Group Agreements (Count VI) and the We Feature Agreement (Count V) because defendant RFG breached various terms of these agreements. [Doc. No. 59, at pp. 19-20.]

Defendant RFG opposed plaintiffs' Motion for Partial Summary Judgment,

arguing that: (1) the Valvoline Group Agreements were improperly terminated because RFG cured any breach by making weekly payments toward outstanding invoices; and (2) the We Feature Agreement is unenforceable because it was never fully and completely executed. [Doc. No. 96, at pp. 7, 10, 12.] On June 4, 2014, the District Court issued an Order denying plaintiffs' Motion for Partial Summary Judgment, because plaintiffs failed to demonstrate there were no material issues of fact for trial on these two causes of action for declaratory relief. [Doc. No. 96, at p. 14.]

The District Court's Order of June 4, 2014, denying plaintiffs' Motion for Summary Judgment states that the following facts are undisputed:

Plaintiffs and RFG were engaged in a franchisor/franchisee relationship for over 20 years where RFG branded its 44 oil change facilities with Valvoline trademarks and purchased Valvoline branded products. Each facility was governed by virtually identical sets of franchise agreements. (Dkt. No. 88, McKeown Decl., Exs. A, B.) The relevant agreements are the Licensee Supply Agreement between Ashland Consumer Markets and RFG; and the Renewal License Agreement between Valvoline Instant Oil Change Franchising, Inc. and RFG. (Id.) Pursuant to the Renewal License Agreement, VIOCF promised not to grant a license to another Valvoline franchisee within a two mile radius of the store to which the License Agreement pertained. (Id., Ex. B., Renewal License Agreement § 1.3.)

From November 17, 2010 to November 24, 2010, RFG placed product orders that resulted in invoices totaling $387,738.32. (Dkt. No. 87-4, Nolan Decl. ¶ 3, Ex. A.) Then between November 29, 2010 through December 22, 2010, RFG placed additional product orders with an invoice of $118,415.35. (Id.) At that time, RFG was on a "Net 45-day" payment term which means that payments of orders are due on average 45 days after they are placed. (Id. ¶ 4.) Any products invoiced on or before the 25th of every month would be due the following month on the 25th. (Id.; Dkt. No. 93-2, Gong Decl. ¶ 13.) As applied to RFG's invoices, orders placed from November 17-24, 2010 totaling $387,738.32 were due by December 25, 2010 and orders placed from November 29- December 22, 2010 totaling $118,415.34 were due on January 25, 2011. (Dkt. No. 87-4, Nolan Decl. ¶ 4.) It is undisputed that RFG did not make full payment of the amounts due on December 25, 2010. (Dkt. No. 93-2, Gong Decl. ¶ 20; Dkt. No. 84-4, Nolan Decl. ¶ 5.)

Consequently, on January 28, 2011, Plaintiffs issued a "Notice of Default and Potential Termination" letter to RFG. (Dkt. No. 88, McKeown Decl., Ex. C.) Without waiving any of its rights, VIOCF granted RFG additional time to cure its breaches by providing payment

///

extensions, and other opportunities to cure. (Id. ¶ 7; Dkt. No. 93-3, Lea Decl., Exs. 6, 7.) Then on November 30, 2011, VIOCF sent RFG a Confirmation of Termination Notice, which was later revised on December 5, 2011. (Dkt. No. 88, McKeown Decl. ¶ 8, Exs. D, E.)

The Revised Confirmation of Termination terminated the license agreements effective November 30, 2011 and sought damages under the contract totaling over $14,610,680.10. (Id., Ex. D.) However, Plaintiffs were willing to settle the matter and temporarily forego enforcement remedies, as well as forego early termination fees if RFG entered into a new "We Feature" Agreement and the required attached General Release. (Id., Exs. D, F.) Under the We Feature agreement, RFG would continue to operate its various locations and would continue to sell exclusively Valvoline products, but would de-brand its facilities and no longer be required to pay royalties and other fees associated with being a franchisee. (Dkt. No. 88, McKeown Decl. ¶ 9.) RFG was required to buy specified products from Valvoline and 'not sell any bulk products which are not Valvoline brand bulk products.' (Id., Ex. F. § 4.) It also required RFG to 'not alter in composition, commingle with products from other sources, or otherwise adulterate the Products.' (Id., Ex. F § 8.) On February 8, 2012, Plaintiffs sent Defendant a Notice of Termination of the We Feature National Account Sales Agreement. (Id., Ex. J.) The parties present different factual versions of the reasons for termination. (Id., Ex. J; Dkt. No. 93-2, Gong Decl. ¶¶ 38-39.)

[Doc. No. 96, at pp. 3-6.]

As to the fifth and sixth causes of action for declaratory relief in the First Amended Complaint, the District Court concluded there were genuine issues of material fact as to the following: (1) whether the alleged default of the Valvoline Group Agreements was cured by RFG with payments made between January and March 2011 [Doc. No. 96, at p. 11]; (2) whether plaintiffs VIOCF and Ashland performed under the Valvoline Group Agreements when they required RFG to pay for supplies in advance; (3) whether plaintiffs VIOCF and Ashland breached the Valvoline Group Agreements by failing to provide RFG with promised financial incentives and funds for new signs and other equipment [Doc. No. 96, at pp. 11-12]; (4) whether plaintiffs properly terminated the License Supply Agreement and the Renewed License Agreement [Doc. No. 96, at p. 12]; and (5) whether the We Feature Agreement and related General Release are enforceable [Doc. No. 96, at pp. 14-15].

### C.    *RFG's First Amended Counterclaim.*

RFG's First Amended Counterclaim alleges: (1) breach of contract as to VIOCF, Ashland, and ALIP; (2) declaratory relief as to VIOFF, Ashland, and ALIP that the

Valvoline Agreements are enforceable; (3) declaratory relief as to VIOCF, Ashland, and ALIP that the We Feature Agreement is unenforceable; (4) intentional interference with prospective economic advantage as to VIOCF, Ashland, and ALIP; (5) fraudulent misrepresentation against VIOCF, Ashland, and ALIP; (6) misappropriation of trade secrets against VIOCF, Ashland, and ALIP; (7) intentional interference with prospective economic advantage as to Henley; and (8) breach of confidence as to Henley. [Doc. No. 75, at pp. 10-18.]

In the First Amended Counterclaim, RFG alleges that VIOCF and Henley conspired to force RFG and its Valvoline service centers out of the Southern California market. [Doc. No. 75, at pp. 3-9.] In 2010, as part of the alleged conspiracy, Henley, with VIOCF's knowledge and assistance, began negotiating with RFG to purchase RFG's Valvoline locations. [Doc. No. 75, at p. 6.]  However, RFG later realized that Henley was not negotiating in good faith and simply wanted to acquire RFG's locations at the lowest possible cost. [Doc. No. 75, at pp. 6-9.]  Henley also wanted to acquire competing EZ-Lube service centers, some of which were located within RFG's exclusive territory, and then convert them to Valvoline service centers. [Doc. No. 75, at p. 5.] According to RFG's First Amended Counterclaim, VIOCF encouraged Henley to pursue the purchase of EZ Lube locations even though this would have violated VIOCF's exclusivity agreement with RFG. [Doc. No. 75, at pp. 4-6.]  To bypass this exclusivity provision and to help Henley purchase RFG's locations at the lowest possible price, RFG believes that VIOCF purposely caused financial hardship to RFG, provided Henley with RFG's confidential business information, and reneged on promises to provide RFG with substantial financial assistance and incentives.  RFG further alleges that Henley and VIOCF provided Henley with "substantial financial assistance to purchase the 72 EZ Lube locations." [Doc. No. 75, at p. 8.]

In February 2012, RFG claims it learned that Henley, with alleged financial assistance from VIOCF, was about to close on an agreement to purchase 72 EZ Lube locations and no longer wished to pay for the acquisition of RFG's service centers.

According to RFG, "Henley intentionally disrupted RFG's license agreements by conspiring with VIOCF to cause VIOCF to terminate RFG license agreements so that Henley could open new locations that would have otherwise violated RFG's license agreement with VIOCF." [Doc. No. 75, at p. 17.]

RFG also alleges in the First Amended Counterclaim that VIOCF and Ashland improperly terminated the RFG license agreements, and then wanted RFG to execute a "We Feature Agreement," which would have allowed its service centers to carry Valvoline products without being a franchisee. [Doc. No. 75, at pp. 5-8.]  However, RFG claims that it never executed a final "We Feature Agreement." [Doc. No. 75, at 8-9.]

On or about February 6, 2012, RFG advised VIOCF, Ashland, and Henley by letter that, as a Valvoline franchisee, RFG had substantial rights which would be violated by Henley's acquisition of the EZ Lube locations.  On February 8, 2011, two days after receiving RFG's letter, VIOCF, Ashland, and Henley filed this lawsuit against RFG. [Doc. No. 75, at p. 9.]

## *Discussion*

The scope of discovery under Rule 26(b) is broad: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b).  However, a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit.  The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the issues in the case or is overly broad, unduly burdensome, unreasonable, or oppressive.  If the resisting party meets
/ / /

its burden, the burden shifts to the moving party to show the information is relevant and necessary.  *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (2010).

### A.    *VIOCF/Ashland Correspondence re EZ Lube Acquisition.*

Defendant RFG's Document Request Nos. 74, 75, 76, and 77 to VIOCF and Nos. 1, 2, 3, and 4 to Ashland all seek correspondence between VIOCF and/or Ashland and Henley or any other person or entity related to Henley's acquisition of EZ Lube stores in Southern California. [Doc. No. 83, at pp. 2-13.] VIOCF and Ashland objected to these requests on various grounds, including relevance, confidentiality, attorney-client privilege, and attorney work product.  *Id.*  Despite the assertion of the attorney-client privilege, it does not appear that plaintiffs produced a privilege log.[1]

VIOCF and Ashland have represented in the Joint Motion and in supplemental responses to RFG's document requests that they have made a reasonable inquiry and a diligent search but there are no responsive documents or all responsive documents have been produced.  [Doc. No. 83, at pp. 2-7, 8-13.] RFG has not provided the Court with any reason to believe that all responsive documents have not been produced.  As a result, it is unclear why these document requests were included in the final version of the parties' Joint Motion or why the Court was required to spend time reviewing the parties' arguments as there is no discovery dispute to resolve.  In other words, RFG has not established that it is entitled to an order compelling further responses to Document Request Nos. 74, 75, 76, and 77 to VIOCF and Nos. 1, 2, 3, and 4 to Ashland.

/ / /

/ / /

---

[1]    "When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed.R.Civ.P. 26(b)(5)(A).  "[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."  *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court, Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  A privilege may be waived if a privilege log is not produced in a timely manner.  *Id.* at 1149-1150.

1

### B.    *The Franchise Disclosure Document.*

2       RFG's Request for Production No. 82 to VIOCF and Request for Production

3    No. 9 to Ashland seek: "The Franchise Disclosure Document (as referenced in VIOCF

4    document number 000019)." [Doc. No. 83, at pp. 7, 13.] VIOCF and Ashland objected

5    to these requests as burdensome and harassing because RFG already has a copy of this

6    document. *Id.* The reason for RFG's request is that the Franchise Disclosure Document

7    was referenced in a letter produced by VIOCF that is Bate-stamped "000019." [Doc.

8    No. 83, at pp. 7, 13.] Although RFG concedes that it may already have a copy of the

9    Franchise Disclosure Document, it "wants to ensure that its copy, and the one

10   referenced in the letter, . . . are the same document." [Doc. No. 83, at pp. 7, 13.] VIOCF

11   and Ashland agreed to produce this document after meeting and conferring with RFG.

12   However, in the parties' Joint Motion, VIOCF and Ashland only represented that they

13   "will" produce the document.  In other words, the record does not indicate that the

14   document was actually produced. [Doc. No. 83, at pp. 7-8, 14.]  As a result, it is unclear

15   whether the parties' dispute over this document is resolved.  Therefore, the Court finds

16   that RFG is entitled to an order compelling VIOCF and Ashland to produce the

17   Franchise Disclosure Document referenced in VIOCF's Document No. 000019 to the

18   extent they have not already done so.

19

### C.    *Henley's EZ Lube Acquisition Negotiations in 2007 and 2008.*

20       Defendant RFG's Document Request No. 57 seeks all documents "from 2007 to

21   2008 that relate or pertain to a possible transaction between [Henley] and the owner of

22   a chain of EZ Lube stores in Southern California for [Henley's] possible acquisition of

23   [these stores] (as referenced in VIOCF Doc. No. 001044)." [Doc. No. 83, at p. 14.]

24   Essentially, RFG seeks access to these documents, because plaintiffs have alleged that

25   RFG interfered with Henley's acquisition of the EZ Lube stores from Goldman Sachs.

26   [Doc. No. 83, at pp. 14-15]  In addition, RFG argues that these documents are relevant

27   to its First Amended Counterclaim, because they may support its theory that Henley's

28   acquisition of the EZ Lube stores in 2012 was part of a conspiracy between Henley,

VIOCF, and Ashland to force RFG out of the Southern California market.  [Doc. No. 83, at pp. 14-15.] Plaintiffs argue that these documents are irrelevant because they date back five years before Henley actually acquired the EZ Lube stores in 2011 from its new owner, Goldman Sachs.  [Doc. No. 83, at p. 14-15; Doc. No. 84, at pp. 1-6; Doc. No. 84-1, at pp. 2-3, Doty Decl.]  The record supports plaintiffs' contention that the documents sought in response to Request No. 57 do not meet the relevance standard of Rule 26.

As referenced in Document Request No. 57, "VIOCF Doc. No. 001044" refers to part of  an Affidavit signed by Donald R. Smith, who is Henley's founder and chief executive officer.  Plaintiffs submitted a copy of Mr. Smith's Affidavit in connection with the parties' Joint Motion.  [Doc. No. 84-1, Doty Decl., at pp. 2-3.]  The Affidavit states in part as follows: "While discussions with [RFG] about the possible acquisition of RFG were proceeding, Affiant began discussions in the fall of 2007 about a possible transaction between Henley and the owner of a chain of EZ Lube stores in the southern California area . . . whereby Henley would acquire the stores.  EZ Lube filed for bankruptcy protection in December 2008.  Upon emerging from bankruptcy, it was controlled by Goldman Sachs, its former secured lender, as its preferred member."  [Doc. No. 84-1, at p. 8.] This Declaration also indicates that in 2010, Henley took steps to acquire the EZ Lube stores from Goldman Sachs.  [Doc. No. 84-1, at p. 8.]  Henley negotiated the exact terms of an Asset Purchase Agreement for the EZ Lube stores with Goldman Sachs "[f]rom September through December 2011." [Doc. No. 84-1, at p. 9.]  The Asset Purchase Agreement was signed on or about December 18, 2011, and Henley's acquisition of the EZ Lube stores from Goldman Sachs closed on March 8, 2012.  [Doc. No. 84-1, at p. 9.]

RFG has not adequately explained the relevance of Henley's failed negotiations in 2007 and 2008 to purchase EZ Lube stores in Southern California from its prior owner.  Without more, these negotiations are simply too attenuated from the allegations in the First Amended Complaint and the First Amended Counterclaim to meet the

relevance standard of Rule 26.  As a result, the Court finds that RFG is not entitled to an order compelling Henley to supplement its response or produce documents in response to Document Request No. 57.

### D. *EZ Lube Bankruptcy Documents.*

Defendant RFG's Document Request No. 58 to Henley seeks: "Any and all documents that relate or pertain to the EZ Lube bankruptcy filed in or about December 2008 (as referenced in VIOCF document number 001044)."  Plaintiffs object to this request as overly broad, burdensome, and harassing, because it seeks public documents from court records that are equally available to all parties.  Plaintiffs objections are sustained.

First, when documents of public record are "equally accessible" to all parties, it is not necessary for the Court to order production.  *Krause v. Buffalo and Erie Cnty. Workforce Dev. Consortium*, 425 F.Supp.2d 352, 374-375 (W.D.N.Y. 2006).  Second, RFG states in the Joint Motion that the request only seeks documents that would not be available in the public record, such as correspondence.  However, the wording of this request is so broad that it could only be read to include the entire bankruptcy court record, which may or may not be within Henley's possession, custody or control, plus any documents Henley may have generated or received about the bankruptcy before and during its negotiations for the acquisition of the EZ Lube stores.  There is nothing in the Joint Motion to indicate that RFG made any attempt to narrow the request to non-public documents during meet and confer sessions.

Without more, it also appears that the relevance of the EZ Lube bankruptcy is too attenuated from the allegations at issue in this case to meet the relevance standard of Rule 26. As outlined above, Henley has stated that it had discussions about a possible acquisition of EZ Lube stores in Southern California in the fall of 2007.  However, EZ Lube filed for bankruptcy protection in December 2008. [Doc. No. 84-1, at p. 8, Smith Decl.]  "Upon emerging from bankruptcy, it was controlled by Goldman Sachs, its former secured lender, as its preferred member." *Id.*  Henley then began negotiations

with Goldman Sachs to acquire the EZ Lube stores in 2010, and the acquisition was completed on March 8, 2012. [Doc. No. 84, at p. 3; Doc. No. 84-1, at p. 8-9.]  For the reasons outlined above, it is clear that Henley's later negotiations with Goldman Sachs in 2010 and 2011 and its ultimate acquisition of EZ Lube stores from Goldman Sachs on March 8, 2012 are relevant to matters at issue in this lawsuit.  However, RFG has not adequately explained the relevance of the EZ Lube bankruptcy in 2008.  Without more, the EZ Lube bankruptcy is simply too attenuated from the allegations in the First Amended Complaint and the First Amended Counterclaim to meet the relevance standard of Rule 26.  Therefore, under the circumstances presented, the Court finds that defendant RFG is not entitled to an order compelling Henley to provide a further response to Document Request No. 58.

> **D.**     ***Documents re Henley's Acquisition of the EZ Lube Stores.***

Defendant RFG's Document Request Nos. 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, and 69 all seek the production of documents from Henley concerning its acquisition of 72 EZ Lube stores in March 2012.  These requests seek the following:

- Without limitation as to time, all written communications between Henley and Goldman Sachs regarding the Southern California EZ Lube stores [Doc. Req. No. 59];

- All documents from 2009 to July 2011 that relate or pertain to discussions between Henley and Goldman Sachs and/or EZ Lube regarding Henley's acquisition of EZ Lube stores in Southern California (as referenced in VIOCF Doc. No. 001044-45) [Doc. Req. Nos. 60 and 61];

- Without limitation as to time, any documents pertaining or relating to the financial terms of Henley's acquisition of EZ Lube stores (as referenced in VIOCF Doc. No. 001045), including all correspondence on this subject between Henley and VIOCF [Doc. Req. Nos. 62 and 64];

/ / /

/ / /

- All correspondence from 2009 to July 2011 between Henley and VIOCF relating or pertaining to Henley's possible acquisition of EZ Lube stores in Southern California [Doc. Req. No. 63];

- All documents from September 2011 through December 2011 relating or pertaining to negotiations on the exact terms of the Asset Purchase Agreement for the EZ Lube stores [Doc. Req. No. 65];

- Without limitation as to time, any correspondence between Henley and VIOCF relating or pertaining to the negotiations for the exact terms of the Asset Purchase Agreement for the EZ Lube stores (as referenced in VIOCF Doc. No. 001045) [Doc. Req. No. 66];

- A copy of the Asset Purchase Agreement between Henley and EZ Lube that was signed on or about December 18, 2011 [Doc. Req. No. 67];

- Without limitation as to time, all correspondence between Henley and any other person or entity related to the March 8, 2012 closing of the EZ Lube acquisition [Doc. No. 68]; and

- All documents relating or pertaining to any escrow for the March 8, 2012 closing of the EZ Lube acquisition [Doc. Req. No. 69].

[Doc. No. 83, at pp. 14-34.]

Henley objected to these requests on various grounds, including relevance, confidentiality, attorney-client privilege, and work product protection. Despite an objection based on the attorney-client privilege, it does not appear that Henley produced a privilege log. In addition, Henley complains that these requests are overly burdensome and harassing. [Doc. No. 83, at pp. 14-34.]

RFG argues that the documents related to the EZ Lube acquisition are relevant because: (1) Henley alleges in Count 10 of the First Amended Complaint that RFG "maliciously interfered with Henley's business expectancy with Ashland and VIOCF by . . . demanding that they cease and desist from any and all further communications with Henley regarding the purchase and operation of the EZ Lube service centers";

(2) Henley further alleges in Count 10 of the First Amended Complaint that RFG "maliciously interfered with Henley's contractual relationship with EZ Lube and its business expectancy with Ashland and VIOCF . . . regarding the purchase and operation of the EZ Lube service centers"; (3) VIOCF and Ashland allege in Count 11 of the First Amended Complaint that "RFG maliciously interfered with Ashland's business expectancy by . . . demanding that Henley cease and desist from any and all further communications with Ashland and VIOCF regarding the purchase and operation of the EZ Lube service centers"; and (4) VIOCF and Ashland further allege in Count 11 of the First Amended Complaint that RFG "attempted to prevent Henley from finalizing the purchase of certain EZ Lube service centers . . ." and this was done "maliciously for the purpose of interfering with Ashland's contractual relationship and expectancy with Henley." [Doc. No. 59, at pp. 23-24.]

RFG also argues that the requested documents about Henley's acquisition of the EZ Lube service centers are relevant to its allegations in its First Amended Counterclaim.  As noted above, the First Amended Counterclaim alleges that VIOCF and Ashland conspired with Henley to force RFG out of the market.  As part of this alleged conspiracy, RFG claims that VIOCF provided Henley with "substantial assistance to purchase the 72 EZ Lube locations" even though some of these locations were within RFG's exclusive territory pursuant to the Valvoline Group Agreements. [Doc. No. 75, at pp. 4-8.]  In Count 7 of the First Amended Counterclaim, RFG alleges that Henley maliciously and "intentionally disrupted RFG's license agreements by conspiring with VIOCF to cause VIOCF to terminate RFG license agreements so that Henley could open new locations that would have otherwise violated RFG's license agreements with VIOCF." [Doc. No. 75, at p. 18.]

RFG believes that the EZ Lube acquisition documents would be helpful in establishing the precise time line of events leading up to Henley's acquisition of EZ Lube stores in Southern California and the relationship of this transaction to the adverse actions allegedly taken by VIOCF and Ashland against RFG.  In addition, RFG believes

the requested documents would support allegations in its First Amended Counterclaim by showing that VIOCF and/or Ashland knew about the progress of the EZ Lube acquisition and were motivated to take action against RFG and to enter into a conspiracy with Henley, because they had a financial interest in Henley's acquisition of the EZ Lube stores and in eliminating RFG as a competitor.  [Doc. No. 83, at pp. 14, 16, 17, 19, 21-22, 24, 26, 27-28, 29, 30.] Thus, RFG has established the relevance of the requested documents under Rule 26.

Plaintiffs argue that the requested documents are not relevant and they should not be compelled to produce them, because they would not be helpful in establishing a time line linking the EZ Lube acquisition with actions taken by VIOCF and Ashland against RFG.  According to plaintiffs, there is "simply no connection" between Henley's acquisition of the EZ Lube locations and VIOCF's motivations for terminating the Valvoline Group Agreements. [Doc. No. 83, at p. 15.]  Plaintiffs contend they have already produced documents establishing that their motive for terminating the Valvoline Group Agreements was RFG's default and failure to pay for products for nearly a year. Nor do plaintiffs believe the financial aspects of the EZ Lube acquisition could establish a connection between this transaction and the adverse actions taken by VIOCF and Ashland  against RFG.   [Doc. No. 83, at pp. 15, 18, 20, 22-23, 24-25, 26-27, 28.] Plaintiffs also contend that many of the documents are irrelevant because they would not show VIOCF's knowledge about the EZ Lube acquisition. [Doc. No. 83, at pp. 15, 18, 24.]

In support of their arguments, plaintiffs cite a Declaration by Donald R. Smith, Henley's chief executive officer, which states, in part, that Henley's "efforts to expand its operations were *independent of and without the advice of Valvoline.*" [Doc. No. 83, at pp. 15, 18, 20, 22-23, 24-25, 26-27, 28 (emphasis in original).] However, plaintiffs arguments and Mr. Smith's Declaration are not enough for plaintiffs to meet their burden of showing that the requested documents are irrelevant.  In alleging interference by RFG with the EZ Lube acquisition, plaintiffs placed this transaction at issue.  As

noted above, the scope of discovery is broad, and the documents requested by RFG appear "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b).  RFG is entitled to test Mr. Smith's vague representation about Henley's operations and to pursue its theory of the case against all of the plaintiffs. RFG is also entitled to discover documents that could support the allegations in its First Amended Counterclaim that the timing of adverse actions taken against it by VIOCF/Ashland and Henley's purchase of the EZ Lube stores were part of a conspiracy to force RFG out of the Southern California market.  [Doc. No. 75, at pp. 10-18.] Therefore, the Court finds that RFG's Document Request Nos. 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, and 69 seek the production of documents that meet the relevance standard of Rule 26.  As a result, RFG is entitled to an order compelling Henley to produce documents responsive to these requests.

On the other hand, the Court agrees with plaintiffs that Document Request Nos. 59, 62, 64, 65, and 68 are overly burdensome because plaintiffs have not limited these requests as to time.  The time period at issue is from 2010, when Henley has stated that it began negotiations with Goldman Sachs for the purchase of EZ Lube locations, through March 8, 2012, when Henley has stated that the EZ Lube acquisition closed. [Doc. No. 84-1, at p. 8-9.] As a result, the Court finds that Henley's responses to these requests must be limited to this relevant time period.

As to Request No. 66, which seeks correspondence between Henley and VIOCF relating or pertaining to the EZ Lube negotiations, Henley has stated that it "does not have any documents responsive to this request" and "will provide a Supplemental Response to this Request so stating." [Doc. No. 83, at p. 30.] However, there is nothing to confirm that Henley actually provided this Supplemental Response.  RFG is therefore entitled to an order compelling Henley to supplement its response to Request No. 66 and to produce all responsive documents, if any.

/ / /

/ / /

### E.    _Documents Relevant to Henley's Claimed Damages._

With respect to Document Request Nos. 59, 62, 68, and 69, plaintiffs argue that any documents responsive to these requests would only be relevant and discoverable to the extent they relate to Henley's damages based on its allegation that RFG's conduct in February 2012 interfered with the closing of the EZ Lube acquisition.  However, plaintiffs' objections and arguments suggest Henley may be withholding responsive documents only because RFG never offered to narrow the scope of these requests to damages.  [Doc. No. 83, at pp. 18, 21, 23, 25.]  Plaintiffs have made a similar argument as to other document requests, including Request Nos. 60, 61, 64, and 65.  As to Request Nos. 60 and 61, plaintiffs further argue that "[t]his request does not call for the production of such documents." [Doc. No. 83, at pp. 21, 23.] In response to Request Nos. 64, 65, and 67, Henley has stated that it "will" produce responsive documents relevant to its claimed damages, but there is nothing to confirm that Henley has actually done so.  [Doc. No. 83, at p. 28.] The Court finds that these arguments must be rejected as vague and ambiguous.

First, any responsive documents relevant to RFG's alleged damages should have been produced long ago as part of Henley's initial disclosures.  In this regard, Rule 26(a)(1)(A)(iii) states in part as follows: "[A] party must, without awaiting a discovery request, provide to the other parties: . . .  (iii) a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered. . . ."  Fed.R.Civ.P. 26(a)(1)(A)(iii).  In addition, Rule 37(c)(1) states in part as follows: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed.R.Civ.P. 37(c)(1).  Other sanctions may also be imposed under Rule 37 for a party's failure to provide

information as required by Rule 26(a) or (e).  Fed.R.Civ.P. 37(c)(1)(A)(B)&(C).  In this case, initial disclosures were scheduled for completion no later than March 15, 2013. [Doc. No. 69, at p. 1.]  Thus, to the extent plaintiffs' responses and arguments as to Document Request Nos. 59, 60, 61, 62, 64, 65, 68, and 69 indicate that Henley is withholding responsive documents relevant to its claimed damages, it has done so without justification and at its own peril.

Second, RFG's failure to narrow the scope of any of its document requests to apply only to documents related to damages is not a valid excuse for Henley to refuse to produce responsive, relevant documents.  Since they are so obviously relevant, any non-privileged documents relevant to the issue of Henley's claimed damages should have been produced in response to these requests regardless of whether the requests are broad enough to include other documents that Henley believes are not relevant under the standards set forth in Rule 26.  Therefore, for these additional reasons, the Court finds that RFG is entitled to an order compelling Henley to supplement its responses and produce all responsive documents to Request Nos. 59, 60, 61, 62, 64, 65, 68, and 69.

###### F.    *Confidentiality.*

Plaintiffs also argue that the Court should not compel them to produce documents pertaining to the EZ Lube acquisition because the parties to the transaction are bound by a "Nondisclosure Agreement," which "reflects an intention on the part of the parties to maintain the confidentiality of the transaction." [Doc. No. 83, at p. 24.]  Because they contend the requested documents are irrelevant to the issues in this lawsuit, plaintiffs claim there is no basis for overriding the alleged Nondisclosure Agreement. [Doc. No. 83, at pp. 17, 20.][2] Based on the foregoing, this Court disagrees.  Documents related to the EZ Lube acquisition are relevant to key issues in the case, especially since Henley has alleged in the First Amended Complaint that RFG "maliciously" interfered with the

---

[2]    In support of this argument, Henley submitted page 1 only of a 6-page Nondisclosure Agreement between Henley and EZ Lube that is dated September 7, 2011. [Doc. No. 84-1, at p. 14, Ex. C, Doty Decl.]

EZ Lube acquisition.  [Doc. No. 59, at pp. 24-25.] Under these circumstances, Henley cannot simply avoid its discovery obligations under the Federal Rules of Civil Procedure by referencing a Nondisclosure Agreement that admittedly "expired upon close of the transaction." [Doc. No. 84, at p. 24.] To the extent Henley believes it has a continued interest in maintaining the confidentiality of any of the documents related to the EZ Lube acquisition, it must seek a protective order from the Court and show good cause under Rule 26(b) or simply negotiate a stipulated

protective order with RFG and the other parties in the case and then take responsibility for drafting one to be submitted to the Court for approval.[3]  In drafting a proposed stipulated protective order, the parties should refer to the requirements set forth in Judge Crawford's "Chambers' Rules" which are accessible via the Court's website at www.casd.uscourts.gov.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED THAT defendant RFG's request for an order compelling plaintiffs to provide further responses to certain requests for production of documents and to produce documents pursuant to Federal Rules of Civil Procedure 26 and 34 must be GRANTED in part and DENIED in part as follows:

1.    Defendant RFG's request for an order compelling VIOCF to provide further responses to Document Request Nos. 74, 75, 76, and 77 is DENIED.

2.    Defendant RFG's request for an order compelling Ashland to provide further responses to Document Request Nos. 1, 2, 3, and 4 is DENIED.

3.    Defendant RFG's request for an order compelling a further response to Request for Production No. 82 to VIOCF and Request for Production No. 9 to Ashland is GRANTED.  To the extent they have not already done so, plaintiffs VIOCF and/or Ashland shall provide defendant RFG with a copy of "The Franchise Disclosure

---

[3]    RFG has stated that it offered to enter into a stipulated protective order but is apparently waiting for VIOCF to draft one. [Doc. No. 83, at p. 3.]

1  Document (as referenced in VIOCF document number 000019)" no later than

2  **_August 15, 2014_**.

3      4.    Defendant RFG's request for an order compelling Henley to provide a

4  further response and produce documents in response to Document Request No. 57 is

5  DENIED.

6      4.    Defendant RFG's request for an order compelling Henley to provide a

7  further response and produce documents in response to Document Request No. 58 is

8  DENIED.

9      5.    Defendant RFG's request for an order compelling Henley to provide

10  further responses to Document Request Nos. 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, and

11  69 is GRANTED.  No later than **_August 15, 2014_**, plaintiff Henley shall supplement its

12  responses and produce all documents responsive to Document Request Nos. 59, 60, 61,

13  62, 63, 64, 65, 66, 67, 68, and 69.  To the extent any responsive documents are withheld

14  based on a claim of privilege, Henley shall provide defendant RFG with a detailed

15  privilege log no later than **_August 15, 2014_**.   However, Henley's production of

16  documents as to Request Nos. 59, 62, 64, 65, and 68 and any supplemental responses

17  to these requests are limited to the time period January 2010 through March 8, 2012.

18      IT IS SO ORDERED.

19  DATED:  June 27, 2014

20

21  _____

22  KAREN S. CRAWFORD
   United States Magistrate Judge

23

24

25

26

27

28